McBRIDE v FOUTCH

Docket No. 77827. Submitted January 9, 1985, at Lansing.—Decided February 19, 1985.

Oscar S. McBride filed a complaint for divorce from his wife Hazel F. McBride, now Hazel F. Foutch, in Isabella Circuit Court. The trial court, Paul F. O'Connell, Jr., ordered plaintiff to pay temporary alimony of $100 per week to defendant. Plaintiff did not pay the temporary alimony to defendant during the almost two year period before the matter came for hearing by the court. At the time of the hearing in July, 1983, the parties placed a settlement agreement on the record. Among the provisions of that settlement agreement was the provision that defendant would have the vendor's interest in a land contract on a piece of property which the parties had sold. The land contract provided for payments of $1,400 per month, and the property was subject to a mortgage with payments of $449.80 per month, leaving a net income of $900.20 per month. The settlement further provided that defendant would give up all rights to past due alimony and all future alimony. At the conclusion of the hearing, the court instructed plaintiff's attorney to prepare an order of judgment of divorce which contained the stipulated settlement agreement. Defense counsel objected to certain provisions of the order of judgment prepared by plaintiff's attorney. Following a hearing on those objections, plaintiff's counsel submitted a redrafted order of judgment. At the hearing on the redrafted order of judgment in November, 1983, defense counsel objected to the redrafted order on the ground that, in the intervening period since the original hearing at which the settlement was placed on the record, plaintiff had received and retained the net proceeds from the land contract and that the order of judgment submitted by plaintiff's counsel would permit plaintiff to retain those proceeds. Defense counsel submitted an alternative draft of the order of judgment which provided that plaintiff would have to pay to defendant any net proceeds from the land contract which he had received and retained since the original hearing at which the property

REFERENCE FOR POINTS IN HEADNOTE
24 Am Jur 2d, Divorce and Separation §§ 831, 834, 836, 938.

settlement was entered and accepted. The trial judge signed the order of judgment submitted by plaintiff's counsel. Defendant moved for relief from judgment, which was denied. Defendant appealed. *Held:*

Property settlement provisions which have been consented to on the record by the parties and accepted by the trial court cannot be modified by the court in the absence of fraud, duress or mutual mistake. Since it was clearly the intent of the parties that the settlement provisions were to take effect immediately and thereby fix each party's rights as of the time the settlement was placed on the record, it was error for the trial court to sign an order of judgment which by its terms permitted the plaintiff to retain the income from the property which he had received after the date the settlement agreement had been made by the parties in open court.

Reversed and remadned.

DIVORCE — PROPERTY SETTLEMENTS — STIPULATIONS — JUDGMENTS.

Property settlement provisions in a divorce action which have been placed on the record and consented to by the parties with their attorneys present are not to be modified upon the signing of the divorce judgment in the absence of fraud, duress or mutual mistake; therefore, it is error for a trial court to order that the settlement provision be given effect as of the date of the signing of the divorce judgment rather than the date upon which the parties stipulated in the agreement and the agreement was accepted by the trial court where the parties intended that their respective rights be fixed as of the date of stipulation and the rights of one of the parties would be adversely affected if the stipulated property settlement provisions were given effect on the date the order of judgment was signed.

*Lynn R. Chamberlain,* for plaintiff.

*James & Hall, P.C.* (by *Thomas W. Hall, Jr.),* for defendant.

Before: ALLEN, P.J., and J. H. GILLIS and W. J. GIOVAN,* JJ.

ALLEN, P.J. Plaintiff filed a complaint for divorce on February 6, 1981, and on August 3, 1981, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

court ordered plaintiff to pay temporary alimony in the amount of $100 per week. When plaintiff failed to make these payments, two show cause orders for failure to pay temporary alimony and a bench warrant were issued. Early in 1982, the plaintiff became ill and underwent heart by-pass surgery. The show cause orders were adjourned pending plaintiff's recovery. Following his release from the hospital, plaintiff went to Florida for the winter of 1982-1983. As a consequence, trial on the complaint for divorce was not scheduled until July, 1983.

On July 20, 1983, the date set for trial, the parties placed a settlement agreement on the record. The parties owned significant assets, most of which were not income producing. An exception was the parties' interest as vendors in a land contract for the sale of the Blue Willow Bar. Sale of the bar for $165,000 took place November 1, 1976. After the down payment, the monthly payment due plaintiff and defendant was $1,400, less a first mortagge payment to the Comerica Bank of Midland of $499.80 which was due each month. Thus, on July 20, 1983, the monthly income to the parties was $900.20 ($1,400 minus $499.80). During the period the divorce was pending trial, the monthly payment of $1,400 was made to plaintiff, who in turn paid the Comerica Bank and retained the balance of the payment for himself.

The settlement agreement, *inter alia,* awarded the defendant all of the parties' vendor interests and obligations under the land contract for the sale of the Blue Willow Bar. At the session on July 20, 1983, both plaintiff and defendant took the stand and upon direct examination by their counsel and cross-examination by opposing counsel testified to their intent and understanding of the settlement agreement. The land contract vendee,

Elton McBride, plaintiff's counsin, also testified to his understanding of the land contract settlement. Plaintiff explained he understood that his wife was to receive the Blue Willow Bar and that she would assume the mortgage to the Comerica Bank which was fully due and payable as a balloon in July, 1983. Defendant testified that she understood she was giving up all rights to alimony past due and alimony due in the future and that, in return for the receipt of payments on the land contract, she would assume and pay the obligation due the Comerica Bank.

At the conclusion of the hearing the trial court stated that a written judgment containing the terms so stipulated should be prepared.[1] Plaintiff's counsel prepared a proposed judgment of divorce, to which counsel for defendant objected for lack of certain specifics, none of which pertained to the provision regarding the sale of the bar. A hearing was held September 23, 1983, at which agreement was reached on the several objections raised by defendant. Plaintiff's counsel submitted a redrafted judgment. As redrafted it contained the following provision in the final paragraph:

"*When judgment becomes final*
"It appearing to the court that more than two (2) months having elapsed since the time this action was commenced, this judgment shall become final upon entry."

This time, defendant's counsel objected to entry of the judgment on the ground that in the inter-

---

[1] "*The court:* The property settlement division as well as the debts and so forth as set forth on the record by stipulation and agreed to by the plaintiff and defendant shall be set forth in a written judgment of divorce. * * * Mr. Mackie, will you prepare the judgment?

"*Mr. Mackie:* Yes sir, I will.

"*The court:* Submit it to Mr. Hall for approval and then to the court for signature."

vening period plaintiff had received and retained at least two payments on the sale of the bar from Elton McBride. Defendant's counsel submitted an alternate draft which provided that plaintiff would be required to pay to defendant the land contract net proceeds of $900.20 for each of the months after the July, 1983, hearing in which plaintiff had received and retained the net proceeds of the land contract. On November 8, 1983, a hearing was held on that issue, and, on November 18, 1983, the trial court signed the judgment as proposed by plaintiff. Defendant's motion for relief from judgment was denied by an order dated April 11, 1984, after a hearing held March 28, 1984. The delay in entering judgment from July 20, 1983, until November 18, 1983, coupled with the provision that the judgment was prospective only resulted in plaintiff's retention of four payments of $900.20 each which defendant would have received and retained had the judgment been effective from the date stipulation was entered. At the same time, because of the provision that past due alimony was cancelled, defendant lost some 17 weeks of alimony at $100 a week.

The single issue upon appeal is whether the plaintiff husband or the defendant wife is entitled to $3,600.80. Defendant argues that a trial court cannot alter an agreement made in open court absent fraud, duress or mutual mistake, *Kline v Kline,* 92 Mich App 62, 78; 284 NW2d 488 (1979), and that the trial court's reliance on *Tiedman v Tiedman,* 400 Mich 571; 255 NW2d 632 (1977), is misplaced because that case is applicable only where one of the parties dies subsequent to the stipulation but prior to the entry of judgment. Plaintiff argues that a court speaks only through its judgments, not its oral statements or written opinions, *Tiedman, supra,* and, because the trial

court had stated that the judgment should first be prepared and approved by both counsel and because defendant has shown no good faith reliance, the two exceptions to the *Tiedman* rule are not applicable.[2]

In this instance we agree with defendant. We have no quarrel with the *Tiedman* rule that a court speaks through its judgments rather than its oral statements. There is no dispute that the divorce would be effective upon the signing of the judgment. That is not the issue here. The issue is whether the terms contained in the judgment of divorce as signed comply with the terms stipulated to by the parties earlier in open court. Because one of the parties in *Tiedman* died before the judgment could be signed, the question was whether any divorce was granted at all. Here there is no question that a judgment of divorce was granted. The question is whether the judgment entered accurately set forth the terms agreed to by the parties. Likewise, this is not a situation where after a property settlement is placed on the record and the judgment in accordance therewith is signed, one of the parties subsequently moves to set aside the judgment. *Tinkle v Tinkle,* 106 Mich App 423, 428; 308 NW2d 241 (1983); *Madden v Madden,* 125 Mich App 54; 336

---

[2] *Tiedman* recognized two exceptions to the general rule that a court speaks through its judgments, not its oral statements: (1) if a judge reads into the record all the terms of a judgment of divorce and declares that such statement is to be given immediate effect as a judgment of divorce; or (2) the parties in good faith have acted upon the strength of the judge's oral statements that a divorce is or will be granted. In denying the motion to set aside the judgment, the trial court relied heavily on *Tiedman:*

"The Supreme Court of this state has issued an opinion which this court is bound to follow, in the case of *Tiedman v Tiedman.* * * * The Court stated in effect that the divorce and property settlement do not become effective until the judgment is signed where it's contemplated that a judge's oral statements that a divorce will or will not be granted will be followed by the signing, and the judgment cannot be effective after one of the parties dies."

NW2d 231 (1983), *rev'd on other grounds* 419 Mich 862 (1984).

While plaintiff faults defense counsel for not objecting to the proposed language regarding the sale of the Blue Willow Bar when the judgment of divorce was first submitted, there is nothing in the record showing that at that early date the plaintiff had received and retained a payment or, if so, that this was known by defendant. However, at the time the redraft of the judgment was submitted, plaintiff had received and retained three monthly payments from Elton McBride and this was known by both parties. Defense counsel promptly objected on the ground that, by making the judgment prospective, Hazel Foutch would forfeit all right to alimony otherwise due from July 20 and would not receive the several monthly payments of $900.20 retained in the intervening period by the plaintiff.

It is inconceivable to us that when the settlement was placed on the record on July 20 that the parties intended anything other than that any land contract payment made by Elton McBride due and payable after July 20, 1983, would, after deducting the sum due the Comerica Bank, be the property of the defendant. Certainly defendant did not intend to waive her right to $100 a week alimony and in addition forfeit her right to the net proceeds on the land contract. This is especially so since, by virtue of her assumption of the mortgage, she became responsible for the payment of renegotiation of the balloon mortgage which was due and payable that same month.

The anticipated immediate commencement of her receipt of the income from the sale of the bar reasonably formed part of the basis on which defendant agreed to give up any right to alimony past due and to be responsible for the balloon payment on the mortgage. That defendant enter-

tained this belief is evidenced by the fact that immediately following the hearing July 20, defendant went to the Blue Willow Bar and informed the manager thereof that all future payments were to be made to her. Also, on September 2, defendant's counsel wrote to Elton McBride, advising him to forward all future payments to defendant's attorney to hold in escrow until the judgment of divorce was signed.

When defendant's counsel objected to the proposed judgment of divorce as resubmitted by plaintiff's counsel, counsel was doing no more than insisting that the judgment, which was to be signed by the parties, conform to the terms of the July 20 agreement reached by the parties. The judgment which was signed and entered by the judge on November 18 incorporated terms different from those agreed upon by the parties. The effective date clause which was added by plaintiff's counsel on resubmission of the proposed judgment allows plaintiff to retain four payments of $900.20 each which under the terms agreed upon in July were payable to defendant. Property settlement provisions placed on the record and consented to by the parties with their attorneys present are not to be modified upon the signing of the judgment of divorce in the absence of fraud, duress or mutual mistake. *Kline v Kline, supra; Michigan National Bank v Patmon,* 119 Mich App 772; 327 NW2d 355 (1982); *Keeney v Keeney,* 374 Mich 660; 133 NW2d 199 (1965).

Accordingly, the order of the trial court dated April 11, 1984, denying defendant's motion to set aside the judgment of divorce entered November 18, 1984, is reversed and the matter is remanded to the trial court for revision of the judgment so as to award defendant four payments of $900.20 each, together with interest thereon.

Reversed and remanded in accordance with this opinion. Costs to defendant.